# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **OZZIE PICKETT, Inmate #N-50240,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 12-cv-0013-JPG** |
| | ) | |
| **YOLANDE JOHNSON, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Ozzie Pickett, an inmate in Tamms Correctional Center ("Tamms"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Plaintiff is serving twenty year sentences for kidnaping, armed robbery, and rape; six year sentences for sexual assault, robbery, kidnaping and armed violence; as well as additional sentences for offenses committed while in prison. Although Plaintiff has accumulated more than three "strikes" under 28 U.S.C. § 1915(g), this Court granted him leave to proceed in forma pauperis based on the allegations in his complaint that he may be under imminent danger of serious physical injury (Doc. 18). This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

> (1) is frivolous, malicious, or fails to state a claim on which relief
> may be granted; or
> (2) seeks monetary relief from a defendant who is immune from
> such relief.

28 U.S.C. § 1915A.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the complaint and supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

**<u>The Complaint</u>**

Plaintiff's lengthy handwritten complaint was filed as two documents (Doc. 1 and Doc. 1-1). In addition, after the complaint was filed, Plaintiff submitted some 139 pages of "exhibits"

which the Court declined to file (*see* Doc. 7), and two affidavits (Docs. 6 & 11).  The affidavits appear to describe matters outside the scope of the complaint.  Plaintiff has not tendered or sought leave to file an amended complaint, and the Court will not accept piecemeal amendments. *See* Fed. R. Civ. P. 15; SDIL-LR 15.1; *Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  Accordingly, the contents of those affidavits shall not be considered, and the Court shall proceed to review the original complaint (Docs. 1 & 1-1) only.

The complaint begins by describing assaults on Plaintiff by several Defendant correctional officers on December 8, 2011.  First, while driving Plaintiff back to Tamms after he had spent a week at Pontiac Correctional Center ("Pontiac") on a writ to appear in court, Defendants Keith Benefield,[1] Watkins, and Lt. John Doe punched Plaintiff on the back and side of his head and verbally threatened him (Doc. 1, p. 6-8).  Defendant Watkins repeatedly slammed on the van's brakes in order to throw Plaintiff against the sides of the "cage" where he was seated in shackles and handcuffs, and Defendant K. Benefield turned on the air conditioner to increase Plaintiff's discomfort.  During the van ride, these Defendants verbally harassed Plaintiff, using racial epithets, and at one point discussed hanging him (Doc. 1, p. 8).

After Plaintiff's arrival at Tamms later that day, Defendant Watkins again punched Plaintiff in the head while Defendants Peterson and Sisk held him down.  Defendants K. Benefield and Hunsaker also participated in this assault (Doc. 1, p. 14).  In addition, Defendants K. Benefield, Peterson, Hunsaker, Watkins, Sisk, and Lt. Robert Benefield, while "shaking

---

[1] Defendant Keith Benefield is described as a correctional officer (Doc. 1, p. 5) and Defendant Robert Benefield is a Lieutenant (Doc. 1, p. 3).  Plaintiff sometimes refers to one or the other of them using the job title only.  For clarity and brevity, the Court will refer to these Defendants using the initials of their first names.

down" Plaintiff's property, destroyed and threw away Plaintiff's mail and legal papers, and read his confidential legal correspondence (Doc. 1, p. 11).

Subsequently, Plaintiff was taken to the prison hospital, where he reported the assault and his injuries to Defendants Hill and Parrish (Doc. 1, p. 15).  They examined him but gave him no medical treatment, nor did they request Internal Affairs to investigate the incident.

Plaintiff claims that some two weeks earlier, on November 24, 2011, he had complained to Defendant Lambert (the Tamms Assistant Warden) about the danger he believed he was in from numerous correctional officers, including those Defendants who perpetrated the December 8, 2011, assaults (Doc. 1, p. 15).  Additionally, Plaintiff had filed a grievance on August 30, 2011, over another incident of excessive force.  He requested Defendant Lambert to "restrain the Defendants from having contact with Plaintiff" and from working on Plaintiff's housing unit (Doc. 1, p. 16).  Plaintiff asserts that these complaints motivated Defendants K. Benefield, R. Benefield, Watkins, Peterson, Sisk, Hunsaker, and John Doe to assault him and destroy his mail, legal correspondence, and other property in retaliation against him for complaining (Doc. 1, p. 16).

Plaintiff further notes that he has several pending court cases which will require him to again be transported to another institution, thus placing him in a situation where another assault such as the one on December 8, 2011, may recur.  Indeed, while this case was awaiting preliminary review, Plaintiff notified the Court that he was again temporarily relocated to Pontiac on February 2, 2012 (Doc. 17).

Plaintiff asserts that several Defendants conspired together to orchestrate and then to cover up the December 8, 2011, assault on him, as well as the retaliatory destruction of his

property.  He further claims that the warden and other administrators and officers (Defendants Johnson, Lambert, Monti, Markel, J. Smith,[2] Delgado, Robertsen, and T. Osman;[3] along with four staff members not named elsewhere in the complaint as Defendants) failed to protect him from racially motivated assaults by other Defendants, failed to discipline correctional staff, ignored complaints from Plaintiff and other inmates, and housed him in inhumane conditions (Doc. 1, p. 19; Doc. 1-1, p. 1).  He states that the Defendants who assaulted him on December 8, 2011, had previously victimized three other black inmates in racially motivated attacks (Doc. 1-1, p. 1).

Plaintiff seeks declaratory relief, a temporary restraining order and injunction requiring the administrative Defendants to restrain nineteen named Tamms staff members (some of whom are Defendants in this action and others who are not named elsewhere in the complaint) and twelve named fellow inmates from any contact with Plaintiff, as well as preventing Defendants from housing Plaintiff in certain units within Tamms (Doc. 1-1, pp. 6-7).  He also requests nominal, compensatory and punitive damages.

**Discussion**

Plaintiff enumerated seven counts in his pro se complaint (Doc. 1-1, pp. 2-6).  Based on the allegations of the complaint, the Court finds it convenient to divide the action into seven (7) counts, but these do not correspond to Plaintiff's original designations of his claims.  The parties

---

[2] Major James Smith is a named Defendant.  Elsewhere in the complaint, Plaintiff refers also to a Kenneth Smith, who is not named as a Defendant.  The Court will refer to these individuals using the initials of their first names.

[3] Defendant Toma Osman is the Counselor/Grievance Officer at Tamms.  One of the non-Defendant staff members identified by Plaintiff is Shan Osman; he gives no further information on this individual.  The Court will refer to these individuals using the initials of their first names.

and the Court will use the Court's designations below in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.

**Count 1 - Excessive Force**

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983.  *See Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).   An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 130 S. Ct. at 1180 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)).  An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Plaintiff also asserts that some Defendants either helped hold him while he was being punched, or merely stood by and watched him being attacked by another officer.  He seeks to hold these Defendants equally liable for his injuries due to their involvement and/or failure to intervene.  The Seventh Circuit has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, stating:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility obviously obtains when the nonfeasor is a supervisory officer to

whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Vill. of E. Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987).

Plaintiff's description of being punched in the head by Defendants K. Benefield, Watkins, and Lt. John Doe, along with their verbal taunts, are sufficient to state a claim that excessive force was used against him in a malicious manner. Likewise, he articulates an excessive force claim against those Defendants who assisted or failed to intervene in the alleged assault. Accordingly, Plaintiff's claims against Defendants K. Benefield, Watkins, Peterson, Sisk, Hunsaker, and Lt. John Doe shall receive further consideration.

**Count 2 - Retaliation**

Plaintiff asserts that both the physical attack on him described in Count 1 and the destruction of his legal papers were motivated by the Defendants' desire to retaliate against Plaintiff for filing grievances and voicing complaints about them.

It is well established that prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437,

439 (7th Cir. 2002).  Naming the suit and the act of retaliation is all that is necessary to state a

claim of improper retaliation.  *Id.*  A complaint that provides a short, clear statement of the

relevant facts complies with the federal rules of civil procedure, and thus cannot be dismissed

because it does not allege all facts necessary to clearly establish a valid claim.  *Id.*  Moreover,

even though a particular action might not amount to a constitutional violation in and of itself, if

such an act was taken in retaliation for the exercise of a constitutionally protected right, then the

claim is actionable under § 1983.  *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009)

(discussing *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) ("[A]n act in retaliation for

the exercise of a constitutionally protected right is actionable under Section 1983 even if the act,

when taken for different reasons, would have been proper.")

At issue here is whether Plaintiff experienced an adverse action that would likely deter

First Amendment activity in the future, and if the First Amendment activity was "at least a

motivating factor" in the Defendants' decision to take the retaliatory action.  *Bridges*, 557 F.3d at

551.  Plaintiff has sufficiently described acts of unconstitutional retaliation at the pleading stages

of this case.  Thus, his retaliation claims against Defendants  K. Benefield, R. Benefield,

Watkins, Peterson, Sisk, Hunsaker, and Lt. John Doe shall receive further review.

## Count 3 - Deliberate Indifference to Medical Needs

On the same day as the December 8, 2011, assault described in Count 1, Plaintiff was

examined by Defendants Hill and Parrish, who are on the Tamms nursing staff (Doc. 1, pp. 4,

15).  He reported the assault to them and they examined him, but he claims they did not provide

him with any medical treatment.  Additionally, he complains that they failed to notify Internal

Affairs to interview Plaintiff about the attack despite hearing Plaintiff's description of the events.

Plaintiff implies that these Defendants suggested he file a grievance over the incident.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle*, 429 U.S. at 106. *See also Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

> To prevail on an Eighth Amendment claim, a plaintiff must show that the responsible prison officials were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Dunigan ex rel. Nyman v. Winnebago Cnty.*, 165 F.3d 587, 590 (7th Cir. 1999). Deliberate indifference involves a two-part test. The plaintiff must show that (1) the medical condition was objectively serious, and (2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard.

*Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The Seventh Circuit considers the following to be objective indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). In addition, a condition that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention is also considered a "serious" medical need. *Id.*

To show deliberate indifference, a prison official must "be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists" and must actually "draw the inference." *Farmer,* 511 U.S. at 837.

Nowhere in Plaintiff's complaint does he describe any physical injuries that he suffered as a result of being assaulted by the Defendant guards. He does not claim that, for example, he needed treatment for pain, first aid for cuts, or medical attention for any other type of injury that might meet one of the above criteria in *Gutierrez*. Thus, he has failed to allege that he suffered from any objectively serious medical need that would have been apparent to the Defendants, or for which he requested treatment. Not having pled the existence of an objectively serious condition, Plaintiff cannot then establish that Defendants Hill or Parrish were deliberately indifferent to a known risk of serious harm. Accordingly, the claim against Defendants Hill and Parrish for deliberate indifference to serious medical needs shall be dismissed without prejudice.

Additionally, Plaintiff's complaint that these Defendants had a duty to initiate an investigation into the assault or notify Internal Affairs does not state a constitutional claim and shall not be addressed further. *See Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009) (a prison employee who is made aware of an inmate's complaint does not thereby assume an obligation to investigate or fix the problem). The numerous grievances submitted by Plaintiff as exhibits demonstrate that he is quite capable of bringing his complaints to the appropriate prison officials.

## Count 4 - Conspiracy

Plaintiff claims that Defendants Delgado, R. Benefield, Maragni, and Lt. John Doe conspired with other Defendants to cover up the unlawful beating, intimidate him, and confiscate his personal property (*see* Doc. 1-1, p. 4; claim identified by Plaintiff as count four). He further

claims that Defendants Monti, J. Smith, Simpson, Markel, and Robertsen conspired with other Defendants in Plaintiff's beating, the confiscation and destruction of his legal property, and the cover-ups of those actions (*see* Doc. 1-1, p. 4-5; claim identified by Plaintiff as count five). Plaintiff specifically references the allegations found in Paragraphs 13,15-17, and 24 of the complaint (Doc. 1, pp. 7-13) as the basis for these conspiracy claims.

Civil conspiracy claims are cognizable under § 1983. *See Lewis v. Washington*, 300 F.3d 829, 831 (7th Cir. 2002) (recognizing conspiracy claim under § 1983). "[I]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date . . . ." *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002). *See also Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003); *Tierney v. Vahle*, 304 F.3d 734, 740 (7th Cir. 2002).

As outlined above in Counts 1 and 2, the underlying claims against Defendants R. Benefield, Lt. John Doe, and others for excessive force and retaliation survive preliminary review.  Because Plaintiff has asserted that the other Defendants named in this count participated in a conspiracy to perpetrate or cover up these unconstitutional acts and has identified the general purpose and date, his allegations are sufficient at the pleadings stage to state a conspiracy claim. Accordingly, this claim against Defendants Delgado, R. Benefield, Maragni, Lt. John Doe, Monti, J. Smith, Simpson, Markel, and Robertsen shall receive further consideration.

**Count 5 - Failure to Supervise and Protect**

In the section of Plaintiff's complaint that he designates as counts one and two (Doc. 1-1, pp. 2-3), he claims that Defendants Johnson (the Tamms warden), Lambert (assistant warden), J. Smith, and Markel (both Majors who supervise security personnel), failed to protect Plaintiff from the excessive force he suffered at the hands of their subordinates, and failed to supervise

their staff or intervene in the conspiracy to violate Plaintiff's civil rights.  Similarly, he states in

paragraph 24 of the complaint (Doc. 1, p. 19) that Defendants Johnson, Lambert, Monti,

J. Smith, Markel, Delgado, T. Osman, and Robertsen, along with several individuals who are not

named as Defendants elsewhere in the complaint (R. Dillon, Bryan Kuder, John Branche, and S.

Osman), "have not improved procedures for protecting Plaintiff from racist waywarded and

undisciplined prison guards . . . " who physically injured him.  Plaintiff then continues with a

rambling, nearly incomprehensible list of complaints resulting from these Defendants' alleged

failure to protect him.

All of these allegations boil down to a theory that these Defendants, by virtue of their

positions as supervisors of the employees who allegedly perpetrated the violations of Plaintiff's

civil rights, should be held liable for the wrongdoing of their subordinate employees.  However,

it is well established that there is no supervisory liability in a civil rights action.  "The doctrine of

*respondeat superior* does not apply to § 1983 actions; thus to be held individually liable, a

defendant must be 'personally responsible for the deprivation of a constitutional right.'"  *Sanville*

*v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d

612, 651 (7th Cir. 2001)).  *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); *Eades v.*

*Thompson*, 823 F.2d 1055, 1063 (7th Cir. 1987); *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th

Cir. 1983); *Duncan v. Duckworth*, 644 F.2d 653, 655-56 (7th Cir. 1981).

Plaintiff's complaint contains no allegations against Defendants Johnson, Lambert, or T.

Osman that would indicate they were personally responsible for the alleged deprivations of

Plaintiff's constitutional rights, or that they directed, had knowledge of, or consented to the

conduct which caused the constitutional violations.  *See Sanville*, 266 F.3d at 740; *Chavez*, 251

F.3d at 652; *McPhaul v. Bd. of Comm'rs of Madison Cnty.,* 226 F.3d 558, 566 (7th Cir. 2000). Therefore, the claims against Defendants Johnson, Lambert, and T. Osman shall be dismissed with prejudice.

Likewise, if Plaintiff intended to include R. Dillon, Bryan Kuder, John Branche, and Shan Osman as Defendants in this action, he has not alleged any personal involvement on their parts in any of the deprivations of his rights described in the complaint. Accordingly, he has not stated any viable claim against them, and any purported claim against them shall be dismissed.

As to Defendants Monti, J. Smith, Markel, Delgado, and Robertsen, Plaintiff has alleged personal involvement on the part of these Defendants in a conspiracy to violate his civil rights in Count 4 above, and that claim shall be considered further. This personal involvement may have included these Defendants' direction, knowledge, or consent to the misconduct of their subordinates. If that is the case, however, it merely adds another layer to the conspiracy claim, and does not state a distinct claim that requires separate consideration. A "failure to supervise" claim would be redundant, as it would be based on the same set of facts already addressed in the conspiracy claim. *See Conyers v. Abitz,* 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"); *Williams v. Snyder*, 150 Fed. Appx. 549, 552-53 (7th Cir. 2005) (dismissing equal protection, access to courts, due process, and Eighth Amendment claims as duplicative of retaliation and freedom of religion claims). Accordingly, the "failure to supervise" claim against Defendants Monti, J. Smith, Markel, Delgado, and Robertsen shall be dismissed with prejudice.

**Count 6 - Failure to Investigate Assault, Respond to Complaints, or Separate Plaintiff from Defendants**

In the section of the complaint that Plaintiff designates as count seven (Doc. 1-1, pp. 5-6), he states that Defendants T. Osman and Delgado ignored his complaints about the attack on him, failed to properly investigate the incident, failed to separate Plaintiff from the Defendants who committed misconduct, and covered up other staff's misconduct. He refers to paragraphs 12, 13, 15, and 17 of the complaint for the basis of this claim (Doc. 1, pp. 6-13).

First, Plaintiff makes no allegations whatsoever against Defendant T. Osman in the portions of the complaint he references for this claim, nor does he make any allegations elsewhere in the complaint that would support the claim he seeks to assert here. As to Defendant Delgado, as stated above, Plaintiff's claims against him for conspiracy (Count 4), which is based on factual allegations that overlap the allegations in this count, shall receive further consideration.

Even if these Defendants did ignore Plaintiff's complaints and fail to investigate them, such actions do not amount to a constitutional violation. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause per se. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Additionally, the denial of a grievance does not give rise to a constitutional claim. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (plaintiff's argument that conspiracy by prison officials to deny administrative review of his grievances by dismissing them was frivolous where

plaintiff had access to the grievance procedure but he did not obtain the outcome he desired).

Plaintiff's complaint that these Defendants failed to separate him from the offending guards likewise has no merit; as stated above, Plaintiff's disagreement with the outcome of his grievances does not state a claim upon which relief may be granted.  *Id.*

For these reasons, the claims in Count 6 against Defendants T. Osman and Delgado shall be dismissed with prejudice.

## Count 7 - Miscellaneous Allegations

Plaintiff makes conclusory references to the conditions of his confinement, including food and the inhumane living environment where he is housed (Doc. 1, p. 18).  However, he fails to explain how these conditions might rise to the level of a constitutional violation; therefore they shall not be considered further.  *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Similarly, he claims that some of the guards are racist, and that some Defendants carried out three racially motivated attacks on other black inmates (Doc. 1, p. 19; Doc. 1-1, p. 1). Plaintiff not only fails to include sufficient allegations for the Court to evaluate these conclusions, but he also lacks standing to bring complaints on behalf of other individuals. *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (plaintiff lacks standing in § 1983 action where he alleges that inmates generally are treated in contravention to the constitution, but not that plaintiff himself was treated in violation of the constitution).  For these reasons, Plaintiff's allegations regarding his conditions of confinement and racially motivated actions fail to state a claim on which relief may be granted, and shall be dismissed without prejudice.

## <u>Other Individuals Not Named as Defendants</u>

In addition to the nineteen individuals Plaintiff identifies as Defendants in this action

(Doc. 1, pp. 2-6), he refers to a number of other prison employees in several sections of his complaint.  Plaintiff implies that these persons may have been involved in some unconstitutional conduct (Doc. 1, pp. 13, 15).  He includes them among the list of employees he requests the named Defendants to keep away from him (Doc. 1-1, p. 6).  However, Plaintiff does not identify what these individuals may have done with enough specificity to allow the Court to determine whether he states a claim against them upon which relief may be granted, and his failure to include them among the listed Defendants indicates that he may not have intended to bring a claim against them.

Accordingly, to the extent that Plaintiff may have been attempting to assert a claim against the following individuals, such claims shall be dismissed without prejudice: Jared Blessing, Mark Bowers, Rubert Boyd, Terry Douglas, Kenneth Hamilton, Adam Henderson, Kyle Massey, Maxine Montgomery, Curtis Moore, Jacob Null, Zachary Oglesby, Christopher Phamister, Kenneth Smith, James Starkweather, Patrick Trokey, and Billy Vaughn.

**Pending Motions**

### A. Motion for Copies (Doc. 10)

On January 19, 2012, Plaintiff filed a document construed as a motion for copies, in which he requests a record of the electronic filing of his complaint.  This motion is **GRANTED** insofar as the Clerk is **DIRECTED** to forward Plaintiff a copy of the electronic docket sheet for this case.  Plaintiff is advised that if he seeks copies of any documents filed in the case, payment must be tendered in advance.  The Court's usual charge for photocopies is $0.50 per page, and the Court is under no obligation to furnish free photocopies to indigent litigants.  *See Robinson v. Miscellaneous*, No. 09C0148, 2009 WL 1649697, at *4 (E.D. Wis. June 11, 2009) (citing *In re*

*Richard*, 914 F.2d 1526, 1527 (6th Cir. 1990)).

### B.  Motion to Change Venue (Doc. 12)

Plaintiff's motion to change venue from the Court's facility in Benton, Illinois, to the East St. Louis, Illinois, courthouse, due to general bias of the jury pool is **DENIED** without prejudice. Such a motion is premature at this stage, and Plaintiff's allegations are insufficient to convince the Court that his motion should be granted.

### C.  Emergency Motion (Doc. 15)

On January 26, 2012, Plaintiff filed an "Emergency Supplement Motion and Affidavit in Support Plaintiff Emergency Request for a Court Order Intervention Defendant Retaliation Harassment Intimidation of Complaining Witness and Obstruction of Legal Mails Communication with the Outside Government" (Doc. 15).  In it, he states that after he filed the instant complaint, some of the Defendants and others have deprived him of meals, tampered with his food, threatened him in some unspecified way, interfered with his outgoing and incoming mail including communications with the lawyer representing him in two pending criminal cases, and wrote a false incident report on him (Doc. 15, pp. 2-5).  Throughout, Plaintiff states legal conclusions and gives no specifics other than some dates when these actions allegedly occurred. He claims to have "no remedy at law" and requests a temporary restraining order ("TRO"), and preliminary and permanent injunction ordering various Defendants and non-Defendant officials to produce all confiscated mail, restraining a long list of correctional officers from having any contact with Plaintiff or his property, mail or food, and preventing them from "unlawfully restraining Plaintiff" in the elevated security unit with mentally ill inmates or using a face mask on him (Doc. 15, pp. 7-8).

A TRO is an order issued without notice to the party to be enjoined that may last no more than 14 days.  FED. R. CIV. P. 65(b)(2).  A TRO may issue without notice *only* if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1).

Plaintiff also seeks a preliminary injunction.  The United States Supreme Court has emphasized that a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 870 (7th Cir. 2006) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original)).  In considering whether to grant injunctive relief, a district court must weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence.

Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction.  *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999); *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 872-73 (7th Cir. 2009).

At this early stage of the litigation, the Court concludes that neither a TRO nor a

preliminary injunction should be issued in this matter.  Plaintiff's allegations do not set forth specific facts demonstrating the likelihood of immediate and irreparable harm *before Defendants can be heard*.

Plaintiff also falls short of demonstrating that a preliminary injunction is warranted. There is no evidence that Plaintiff has attempted to utilize alternative measures that are available to him to solve the issue, such as placement in protective custody where he may be in the presence of different correctional officers. Ill. Admin. Code tit. 20, § 501.310 (1987).  In Plaintiff's case, given the lengthy list of correctional officers whom he wishes to avoid, it may be impractical to grant him the relief he seeks.  Additionally, federal courts must exercise equitable restraint when asked to take over the administration of a prison, something that is best left to correctional officials and their staff.  *See Sandin v. Conner*, 515 U.S. 472, 482 (1995); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) (noting that where a plaintiff requests an award of remedial relief that would require a federal court to interfere with the administration of a government agency, "appropriate consideration must be given to principles of federalism in determining the availability and scope of [such] relief").

Finally, Plaintiff is advised that though his motion is full of new allegations, these will not be considered as supplemental to Plaintiff's current complaint.  Should Plaintiff wish the Court to consider these claims, he must bring them in a new suit, where the fee must be fully pre-paid unless Plaintiff can establish that he is in "imminent danger of serious physical injury" as a result of the alleged constitutional violations.  *See* 28 U.S.C. § 1915(g).

Accordingly, Plaintiff's motion seeking a temporary restraining order and preliminary injunction (Doc. 15) is **DENIED** without prejudice.  As Plaintiff is also seeking injunctive relief

in the claims that have survived threshold review, that request may be reconsidered at the appropriate time.

**D.  Motion for Status Report (Doc. 19)**

Finally, Plaintiff's motion for status report is **DENIED AS MOOT**.

<u>**Disposition**</u>

**IT IS HEREBY ORDERED** that **COUNTS 3, 5, 6** and **7** fail to state a claim upon which relief may be granted, and thus are **DISMISSED**.  The dismissal of **COUNTS 3** and **7** is without prejudice; the dismissal of **COUNTS 5** and **6** is with prejudice.

**IT IS FURTHER ORDERED** that Defendants **JOHNSON, LAMBERT** and **T. OSMAN** are **DISMISSED** from this action with prejudice.  Defendants **HILL** and **PARRISH** are **DISMISSED** from this action without prejudice.

**IT IS FURTHER ORDERED** that any claims Plaintiff attempted to assert in Count 5 against **R. DILLON, BRYAN KUDER, JOHN BRANCHE,** and **SHAN OSMAN**, who are not named as Defendants in this action, are also **DISMISSED** with prejudice.  Likewise, any claims Plaintiff may have sought to bring against **JARED BLESSING, MARK BOWERS, RUBERT BOYD, TERRY DOUGLAS, KENNETH HAMILTON, ADAM HENDERSON, KYLE MASSEY, MAXINE MONTGOMERY, CURTIS MOORE, JACOB NULL, ZACHARY OGLESBY, CHRISTOPHER PHAMISTER, KENNETH SMITH, JAMES STARKWEATHER, PATRICK TROKEY,** and **BILLY VAUGHN**, who are not named as Defendants in this action, are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that as to the claims in the remaining **COUNTS 1, 2,** and **4,** the Clerk of Court shall prepare for Defendants **MONTI, MARKEL, JAMES SMITH,**

**DELGADO, ROBERT BENEFIELD, KEITH BENEFIELD, WATKINS, PETERSON, SISK, HUNSAKER, MARAGNI, ROBERTSEN,** and **SIMPSON** (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendant until such time as Plaintiff has identified him by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the name and service address for this individual.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be

filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk

of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

      **IT IS SO ORDERED.**

      **DATED:   March 20, 2012**

                                    *s/J. Phil Gilbert*
                               **United States District Judge**