IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| OZZIE PICKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No.  **3:12-cv-00013-JPG-PMF** |
| | ) |
| YOLANDE JOHNSON, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

**FRAZIER, Magistrate Judge:**

Before the Court is the defendants' motion for summary judgment (Doc. 58). For the following reasons, it is recommended that the defendants' motion for summary judgment (Doc. 58) be granted.

**I.   FACTS**

The plaintiff, Ozzie Pickett, is presently an inmate at Tamms Correctional Center ("Tamms"), a prison facility under the jurisdiction of the Illinois Department of Corrections ("IDOC"). In its initial screening order (Docs. 23), the Court described the factual allegations of the complaint as follows:

> The complaint begins by describing assaults on Plaintiff by several Defendant correctional officers on December 8, 2011. First, while driving Plaintiff back to Tamms after he had spent a week at Pontiac Correctional Center ("Pontiac") on a writ to appear in court, Defendants Keith Benefield, Watkins, and Lt. John Doe punched Plaintiff on the back and side of his head and verbally threatened him (Doc. 1, p. 6-8). Defendant Watkins repeatedly slammed on the van's brakes in order to throw Plaintiff against the sides of the "cage" where he was seated in shackles and handcuffs, and Defendant K. Benefield turned on the air conditioner to increase Plaintiff's discomfort. During the van ride, these Defendants verbally harassed Plaintiff, using racial epithets, and at one point discussed hanging him (Doc. 1, p. 8).
> After Plaintiff's arrival at Tamms later that day, Defendant Watkins again punched Plaintiff in the head while Defendants Peterson and Sisk held him down.

1

Defendants K. Benefield and Hunsaker also participated in this assault (Doc. 1, p. 14).  In addition, Defendants K. Benefield, Peterson, Hunsaker, Watkins, Sisk, and Lt. Robert Benefield, while "shaking down" Plaintiff's property, destroyed and threw away Plaintiff's mail and legal papers, and read his confidential legal correspondence (Doc. 1, p. 11).

Subsequently, Plaintiff was taken to the prison hospital, where he reported the assault and his injuries to Defendants Hill and Parrish (Doc. 1, p. 15).  They examined him but gave him no medical treatment, nor did they request Internal Affairs to investigate the incident.

Plaintiff claims that some two weeks earlier, on November 24, 2011, he had complained to Defendant Lambert (the Tamms Assistant Warden) about the danger he believed he was in from numerous correctional officers, including those Defendants who perpetrated the December 8, 2011, assaults (Doc. 1, p. 15).  Additionally, Plaintiff had filed a grievance on August 30, 2011, over another incident of excessive force.  He requested Defendant Lambert to "restrain the Defendants from having contact with Plaintiff" and from working on Plaintiff's housing unit (Doc. 1, p. 16).  Plaintiff asserts that these complaints motivated Defendants K. Benefield, R. Benefield, Watkins, Peterson, Sisk, Hunsaker, and John Doe to assault him and destroy his mail, legal correspondence, and other property in retaliation against him for complaining (Doc. 1, p. 16).

Plaintiff further notes that he has several pending court cases which will require him to again be transported to another institution, thus placing him in a situation where another assault such as the one on December 8, 2011, may recur.  Indeed, while this case was awaiting preliminary review, Plaintiff notified the Court that he was again temporarily relocated to Pontiac on February 2, 2012 (Doc. 17).

Plaintiff asserts that several Defendants conspired together to orchestrate and then to cover up the December 8, 2011, assault on him, as well as the retaliatory destruction of his property.  He further claims that the warden and other administrators and officers (Defendants Johnson, Lambert, Monti, Markel, J. Smith, Delgado, Robertsen, and T. Osman; along with four staff members not named elsewhere in the complaint as Defendants) failed to protect him from racially motivated assaults by other Defendants, failed to discipline correctional staff, ignored complaints from Plaintiff and other inmates, and housed him in inhumane conditions (Doc. 1, p. 19; Doc. 1-1, p. 1).  He states that the Defendants who assaulted him on December 8, 2011, had previously victimized three other black inmates in racially motivated attacks (Doc. 1-1, p. 1).

Plaintiff seeks declaratory relief, a temporary restraining order and injunction requiring the administrative Defendants to restrain nineteen named Tamms staff members (some of whom are Defendants in this action and others who are not named elsewhere in the complaint) and twelve named fellow inmates from any contact with Plaintiff, as well as preventing Defendants from housing Plaintiff in certain units within Tamms (Doc. 1-1, pp. 6-7).  He also requests nominal, compensatory and punitive damages.

Doc. 32 at 3-5.

## II.   PROCEDURAL HISTORY

On January 6, 2012, Pickett filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against 18 named defendants and 1 unknown defendant. Doc. 1.  Although Pickett had accumulated more than three "strikes" under a statutory clause prohibiting the filing of a prisoner lawsuit when he or she has previously filed three or more frivolous, malicious, or failed attempts to state a claim upon which relief may be granted lawsuits (28 U.S.C. § 1915(g)), the Court found that Pickett had successfully exercised the exception to that clause in that Pickett was under "imminent danger of serious physical injury." *See* Doc. 18.  On March 20, 2012, the Court conducted preliminary review of the complaint pursuant to its authority in 28 U.S.C. § 1915A. *See* Doc. 32.  In that order, the Court dismissed 5 defendants along with 4 of the 7 claims in the complaint. *See id.* at 20.  The Court found that the following three claims would continue:

> Count 1: Excessive Force in violation of the right to be free from cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution with respect to allegations related to being punched in the head, verbal taunts, and failure to intervene on December 8, 2011, against defendants K Benefield, Watkins, Lt. John Doe, Watkins, Peterson, Sisk, and Hunsaker.
>
> Count 2: Retaliation for filing grievances (protected activity) in violation of the First Amendment of the U.S. Constitution with respect to allegations of retaliation occurring on or after December 8, 2011, against defendants K. Benefield, R. Benefield, Watkins, Peterson, Sisk, and Lt. John Doe.
>
> Count 4: Conspiracy to violate Eighth and First Amendment rights (*see* Counts 1 and 2) with respect to allegations of planning and covering up the unlawful beating, intimidation, and confiscation personal property on or after December 8, 2011, against defendants Delgado, R. Benefield, Maragani, Lt. John Doe, Monti, J. Smith, Simpson, Markel, and Robertson.

*See id*. at 6-11.

On May 31, 2012, twelve of the remaining defendants filed the instant (Doc. 58) motion for summary judgment.  Pickett filed a motion for an extension of time to file a response on June

27, 2012. *See* Doc. 63.  Attached to the motion were 107 pages of various exhibits. *See id*. at 7-15; Docs. 63-1 – 63-5.  The Court granted the extension of time (*see* Doc. 66) but no further information regarding the exhaustion issue was filed by Pickett.

### III.   DISCUSSION

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with a lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008); *Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999).  The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).  "Exhaustion is an affirmative defense, and the burden of proof is on the defendants." *Id*. (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their jursidiction are required to follow in order to exhaust administrative remedies.  For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810.  At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*.  The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*.  The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer ("CAO"). *See* 20 Ill.Admin.Code § 504.830.  The CAO

typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.* The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB"). After receiving a response from the CAO at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850. The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id.* With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues by conducting an evidentiary hearing. *See Pavey*, 544 F.3d at 740-42. The Court is permitted to make findings of fact and credibility assessments of witnesses at such an evidentiary hearing. *See Pavey v. Conley*, 663 F.3d 899, 904 (7th Cir. 2011). If the Court finds that the prisoner exhausted his administrative remedies, "the case will proceed to pretrial discovery, and if necessary a trial, on the merits." *See Pavey*, 544 F.3d at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

(a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;
(b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or
(c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### A. The Defendants' Motion for Summary Judgment (Doc. 58)

The defendants argue that Pickett failed to properly exhaust a grievance regarding the the remaining claims in this lawsuit. *See* Doc. 58 at 4-5. In support, the defendants have provided the affidavit of Gina Allen, an ARB board member. *See* Doc. 58-1. Ms. Allen attests that the she

5

searched the ARB records for grievances received from Pickett regarding the allegations of use of force and destruction of property on December 8, 2011. *See id*. at 2 ¶ 4.  The ARB had no such records. *See id*.

The evidence provided by the defendants creates a presumption that Pickett failed to properly exhaust his administrative remedies.  It will be up to Pickett to come forward with facts demonstrating, at the very least, that there is a genuine issue of material fact to hold an evidentiary hearing regarding the exhaustion issue. *See* FED. R. CIV. P. 56; *see also Pavey*, 544 F.3d at 740-42.

Specifically, Pickett will need to demonstrate that 1) he filed a grievance on or after December 8, 2011, the relevant date giving rise to the remaining allegations in this case, and 2) that the grievance in question became fully exhausted before January 6, 2012.  The events giving rise to the remaining claims in this lawsuit occurred on December 8, 2011, so any grievances filed prior to that date are not relevant.  Any exhaustion attempts occurring after January 6, 2012 are not relevant because a prisoner cannot file suit and then exhaust his administrative remedies while suit is pending. *See, e.g., Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004) (citing *Perez*, 182 F.3d 532).

The Court has thoroughly examined the extensive filings by Pickett in the record and finds no evidence that a grievance was ever filed regarding the remaining claims in this lawsuit.  Pickett has supplied copies of grievances that he has filed as several exhibits to various motions. *See* Docs. 61-67.  The relevant dates of the grievances provided by Pickett can be summarized as follows:

1. Grievance dated December 17, 2010. Received by Tamms counselor February 1, 2011. (Doc. 63 at 13)
2. Grievance dated December 17, 2010. Received by Tamms March 11, 2011. (Doc. 63 at 15).

3. Grievance dated May 7, 2011. Received by Tamms on May 9, 2011. (Doc. 61 at 18).
4. Grievance dated June 26, 2011. Received by Tamms counselor on June 30, 2011. (Doc. 61-1 at 10).
5. Grievance dated June 26, 2011. Received by Tamms counselor on July 20, 2011. (Doc. 61-1 at 11).
6. Grievance dated June 26, 2011. Received by ARB July 13, 2011. (Doc. 61-1 at 14).
7. Grievance dated June 30, 2011. Received by ARB on July 13, 2011. (Doc. 61 at 14).
8. Grievance dated July 6, 2011. Received by Tamms counselor July 13, 2011. (Doc. 61-1 at 16-18).
9. Grievance dated July 27, 2011. Received by Tamms counselor August 3, 2011. (Doc. 63-3 at 1).
10. Grievance dated August 22, 2011. Received by Tamms August 23, 2011. (Doc. 61-3 at 5).
11. Grievance dated August 23, 2011. Received by Tamms counselor August 24, 2011. (Doc. 63-2 at 18).
12. Grievance dated August 30, 2011. Received by Tamms September 8, 2011. (Doc. 61-2 at 12) (Doc. 63-1 at 18).
13. Grievance dated September 18, 2011. Received by Tamms September 2, 2011. (Doc. 61-2 at 16) (Doc. 63-2 at 1).
14. Grievance dated September 20, 2011. Received by Tamms September 21, 2011. (Doc. 13).
15. Grievance dated September 24, 2011. Received by Tamms counselor September 28, 2011. (Doc. 63-2 at 4).
16. Grievance dated September 25, 2011. Received by Tamms counselor September 28, 2011. (Doc. 61-4 at 3) (Doc. 61-1 at 2).
17. Grievance dated November 3, 2011. Received by Tamms November 4, 2011. (Doc. 63-1 at 5).
18. Grievance dated November 5, 2011. Received by Tamms counselor December 27, 2011. (Doc. 61-2 at 6).
19. Grievance dated November 18, 2011. Received by Tamms November 17, 2011. (Doc. 63-1 at 7).
20. **Grievance dated January 3, 2012. Received by Tamms counselor January 9, 2012. (Doc. 61-3 at 10) (Doc. 63-1 at 10).**
21. Grievance dated January 18, 2012. Received by Tamms January 20, 2012. (Doc. 61-3 at 7) (Doc. 63-3 at 4).
22. Grievances dated January 18, 2012. Received by Tamms January 19, 2012. (Doc. 61-1 at 3-6).
23. Grievance dated January 26, 2012. Received by Tamms February 6, 2012. (Doc. 61-2 at 1) (Doc. 63-2 at 8).
24. Grievance dated February 6, 2012. Received by Tamms on February 7, 2012. (Doc. 61-2 at 9).
25. Grievance dated February 9, 2012. Received by Tamms counselor March 19, 2012. (Doc. 61-4 at 6) (Doc. 63-2 at 6).

26. Grievance dated February 15, 2012. Received by Tamms counselor March 19, 2012. (Doc. 61-3 at 3) (Doc. 63-3 at 7).
27. Grievance dated March 14, 2012. No indication when received. (Doc. 61-4 at 8) (Doc. 63-3 at 12).
28. Grievance dated March 28, 2012. Received by Tamms March 30, 2012. (Doc. 61-5 at 1) (Doc. 63-3 at 15).
29. Grievance dated June 15, 2012. No indication when received. (Doc. 63-1 at 15) (Doc. 67 at 7).
30. Grievance dated June 14, 2012. No indication when received. (Doc. 63-2 at 11).
31. Grievance dated June 16, 2012. No indication when received. (Doc. 63-2 at 15) (Doc. 67 at 10).
32. Grievance dated June 17, 2012. No indication when received. (Doc. 63-3 at 9).

Of the 32 grievances listed above, only one of them appears to fall in between December 8, 2011, and January 6, 2012. *See* Doc. 61-3 at 10; Doc. 63-1 at 10. However, the grievance in question was not received by a Tamms counselor until January 9, 2012, so it could not have become fully exhausted by January 6, 2012. *See id*.

Pickett has filed hundreds of pages of copies of grievances as exhibits to various documents in this case, as the Court outlined above. There is no sign of grievance that falls within the relevant date range and that details the remaining allegations in this lawsuit.[1] The Court finds it highly unlikely that such a grievance exists because Pickett surely would have included the most relevant grievance in one of his massive filings of copies of grievances. Pickett has not provided any further evidence regarding his exhaustion attempts despite being given every opportunity to do so. *See* Doc. 66. Based on the evidence before the Court, there is no genuine issue of material fact necessitating an evidentiary hearing on the issue of exhaustion.

---

[1] It would have been very difficult to begin with for Pickett to fully exhaust a grievance within the 29 day period he had for this task, which ultimately requires the ARB to deny an appeal at step three of the grievance process.

It appears more likely than not that Pickett did not attempt to his administrative remedies with respect to the remaining claims in this case. As the U.S. Supreme Court has noted, the exhaustion requirement accomplishes two important policy objectives: 1) exhaustion protects the authority of the administrative agency by giving it an "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and it discourages "disregard of [the agency's] procedures," and 2) "exhaustion promotes efficiency. Claims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted). Here, the evidence in the record indicates that Pickett bypassed the administrative process and headed straight to federal court. The defendants correctly point out that the fact that Pickett filed this lawsuit under the "imminent danger" exception to the three strikes rule is no barrier to the 42 U.S.C. § 1997e(a) exhaustion requirement. *See, e.g., Fletcher v. Menard Correctional Center*, 623 F.3d 1171, 1175 (7th Cir. 2010) ("So imminent danger did not excuse his failure to exhaust his administrative remedies, and his suit was therefore properly dismissed.").

## IV. RECOMMENDATION

For the forgoing reasons, it is recommended that the defendant's motion for summary judgment (Doc. 58) be granted as follows:

1) It is recommended that the Court find that there is no genuine issue of material fact for an evidentiary hearing on the defendants' affirmative defense of failure to exhaust administrative remedies;

2) It is recommended that the Court find that the movants have demonstrated by preponderance of the evidence that the plaintiff has failed to exhaust his available administrative remedies against them; and

3) It is recommended that defendants Keith Benefield, Robert Benefield, Jose Delgado, Brent Hunsaker, John Maragni, Homer Markel, Daniel Monti, Jeff Peterson, Sarah Robertsen, Jamie Sisk, James Smith, James Watkins, and Eugene Simpson be dismissed from this lawsuit.

If these recommendations are adopted in their entirety, Counts 1, 2, and 4 will remain against defendant John Doe.

**SO RECOMMENDED.**

**DATED: August 6, 2012.**

*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE